CITIZENS' STATE BANK, Respondent, v. GEORGE M. PETTIT et al., Appellants.

85  499
j97  1102

Kansas City Court of Appeals, November 5, 1900.

1. **Pleadings:** AIDER BY ANSWER: NOTE WITH SUPPLEMENTAL AGREEMENT. The petition declared upon a promissory note without more. The answer set forth the note and a supplemental agreement. The replication in effect admitted the existence of the agreement. Held, the omissions of the petition were obviated by the answer.

2. **Vendor and Vendee:** ASSUMPTION OF MORTGAGED DEBT: PRINCIPAL AND SURETY. If the vendee in the deed he accepts assumes as part of the purchase money a mortgaged debt on the land, he becomes in regard to such debt the principal, and the mortagagor is surety.

3. ———: PAYMENT OF PURCHASE MONEY: ASSUMPTION OF MORTGAGED DEBT: INDEPENDENT CONSIDERATION. Where the vendee pays the full purchase money and then on an independent consideration, such as a secured note of the vendor, assumes a mort gaged debt on the land, the relation of principal and surety does not exist; and such note may be treated as an indemnity to the vendee for loss he may sustain by paying the debt or the foreclosure of the mortgage.

4. ———: INDEMNITY NOTE: PENALTY: MEASURE OF DAMAGES. Where the vendee who has assumed the mortgaged debt on purchased land brings an action on the indemnity note, which constituted the consideration of his assumption of the debt, the amount of said note will be treated as a penalty, and the vendee can only recover the actual amount of damages he has sustained by reason of the payment.

Bauk v. Pettit.

Appeal from the Grundy Circuit Court.—*Hon. P. C. Stepp,* Judge.

Affirmed.

*Platt Hubbell* for appellants.

(1)   The evidence shows that the contract set forth in defendants' answer, the only contract executed by defendants, is a contract of indemnity; under the law, the sum of $1,700 therein mentioned is a penalty.   This being true, there could not be a legal recovery on this contract, under any circumstances, for any sum in excess of the damage sustained by N. H. Jaynes.   The $650 paid by D. S. Hazen would, under any circumstances, have to be deducted from any recovery on this contract.   Ewing v. Reilly, 34 Mo. 113; May v. Crawford, 150 Mo. 531.   (2) "Our code, with all its comprehensive liberality will not admit a plaintiff to sue for a horse and recover a cow."   Waldhier v. Railroad, 71 Mo. 518.   Therefore, this plaintiff, having sued on a promissory note, an absolute, unconditional promise to pay money, can not recover on proof of a contract of indemnity—a conditional promise to pay money.   Perry v. Barret, 18 Mo. 145; Beck v. Ferrara, 19 Mo. 32; Scovill v. Glasner, 79 Mo. 449; Webb v. Tweedie, 30 Mo. 488; Whipple v. B. & L. Ass'n, 55 Mo. App. 558; Bank v. Umrath, 42 Mo. App. 525; Faulkner v. Faulkner, 73 Mo. 327; Huston v. Tyler, 140 Mo. 252; Clements v. Yeates, 69 Mo. 623.   (3)   A nullifying alteration is made either by changing the words or figures on the face of a written instrument, or, separating and detaching a written instrument so as to leave one portion of it in the form of a promissory note; or, by detaching from a promissory note a writing previously

attached to it and constituting part of the contract. Law v. Crawford, 67 Mo. App. 153; Kelly v. Thuey, 143 Mo. 434; State v. Stratton, 1 Am. Rep. 282; Stephens v. Davis, 2 S. W. Rep. 382; Wait v. Pomeroy, 4 Am. Rep. 395; Wheelock v. Freeman, 23 Am. Dec. 674; Benedict v. Cowden, 10 Am. Rep. 382; Evans v. Foreman, 60 Mo. 452; Bank v. Dunn, 62 Mo. 79; Whitmer v. Frye, 10 Mo. 349; 2 Am. and Eng. Ency. of Law, (2) 203, 228; 2 Dan. Neg. Ins. (Ed. of 1876), sec. 1397, 1410. Defendant's instructions numbered 1 and 3 should have been given. 2 Parsons N. & B. (2 Ed.), 545; 1 Randolph Com. P. (Ed. 1886), sec. 191; 3 Randolph Com. P. (Ed. 1886), secs. 1752, 1760; Railroad v. Atkison, 17 Mo. App. 494.

*Hall & Hall* for respondent.

(1) The detaching of the agreement from the note was not an alteration of the contract. Owings v. McKenzie, 133 Mo. 323; Moore v. Bank, 22 Mo. App. 684, 690; Burnham v. Gosnell, 47 Mo. App. 637; Hawes v. Mulholland, 78 Mo. App. 493. (2) The agreement was no defense against the plaintiff's bank. Maze v. Heinze, 53 Ill. App. 503; Jennings v. Todd, 118 Mo. 296, 304; Bank v. Bangs, 42 Mo. 450. (3) There was no evidence that the papers were separated by Jaynes, or any person claiming through or under him, and unless done by their knowledge or consent it does not avoid the liability of defendants upon the note. Medlin v. Platte County, 8 Mo. 235, 239; Lubbering v. Kohlbrecher, 22 Mo. 596; Hunt v. Gray, 35 N. J. 227; s. c., 10 Am. Rep. 232, 235; 2 Am. and Eng. Ency. of Law (2 Ed.), 217. (4) And the alternation of an instrument by accident or mistake even in a material part does not vitiate it or effect the liability of the parties. 2 Am. and Eng. Ency. of Law (2 Ed.),

261; Boulware v. Bank, 12 Mo. 352; Russell v. Longmoor, 29 Neb. 209. (5) By reason of defendants having failed and refused to pay off and satisfy the mortgage on the Jaynes or F. A. Hazen 28 acre tract of land and having allowed it to be advertised for sale, and Jaynes having been forced to pay it in order to save his land from sale, defendants' option under the agreement was forfeited and expired and the agreement ceased to be a part of the note and the note became absolute.    4 Am. and Eng. Ency. of Law (2 Ed.), 144; Stout v. Watson, 45 Minn. 454; Odiorne v. Sargent, 6 N. H. 401; Railway v. Atkison, 17 Mo. App. 484; Schulenberg v. Magwire, 42 Mo. 391; 1 Daniels on Neg. Ins. (1 Ed.), sec. 155, p. 123; Rothschild v. Lynch, 76 Mo. App. 339; 2 Parsons on Bills and Notes (1 Ed.), p. 537.

SMITH, P. J.—The defendants executed to one Jaynes their promissory note negotiable in form for seventeen hundred dollars, payable three years after the date thereof, which was supplemented with an agreement of even date therewith, which was to the effect following:

"It is agreed and mutually understood that this note, $1,700, and interest hereto attached is to be returned to the makers without collection when the deed of trust is released by said G. M. Pettit and Abe and Howard Pettit as sureties, said deed of trust is now on lands known as F. A. Hazen lands northeast of Trenton, Mo., north of Q. O. & K. C. R. R. and along Muddy creek, when said Pettit shall see said land clear to N. H. Jaynes the present owner by virtue of which a certain deed of trust of $1,700 is now released against G. M. Pettit and this note and agreement takes place of same deed of trust now released under same conditions and agreements as other note carrying the deed of trust."

The said note was assigned by the payee to one Cooper

and the latter for value assigned it to the plaintiff who brought this action thereon. No reference was made in the petition to the supplementary agreement. The defendants in their answer set forth the note and agreement. The replication after denying generally the allegations of new matter set forth in the answer, expressly admitted the execution of the supplementary agreement. The replication while apparently denying and admitting the execution of the deed of trust must, we think, be construed as admitting it. It should be construed as denying all the allegations of new matter not therein expressly admitted. If the allegations of the petition were insufficient they were helped out by the defendants' answer supplementing them. Such allegations and those of the answer sufficiently alleged the note and supplementary agreement for the purposes of the trial. The omission of the petition was obviated by the answer of the defendant. Whipple v. B. & L. Ass'n, 55 Mo. App. 554; Krum v. Jones, 25 Mo. App. 71; Garth v. Caldwell, 72 Mo. 622. The pleadings we, therefore, think were well enough.

The answer of the said defendants alleged that the said note and supplemental agreement were one instrument written on separate pieces of paper attached together and that the owner thereof fraudulently detached the same so that one of them became in form a promissory note which was filed with the plaintiff's petition and that such note was not that of defendants. It appears from the evidence that the note was written on one piece of paper and the agreement on another, but whether or not they were attached when executed or were so when they were delivered to the payee in the note is by no means clear. There was not the slightest evidence adduced which tended to show that the payee or any holder of the instrument fraudulently detached them. Both papers were pleaded and before the court at the trial and not one jot or

tittle of either appeared to have been changed or abated. It does not appear when, how or by whom the papers were separated. The payee testified that he did not remember whether the papers were fastened together when he received them. He further testified that he never detached them himself, but that when he sold the note to Cooper he kept the agreement "for mine." And from this remark of the payee we may infer that he thought that notwithstanding he had transferred the note, that he had the right to hold on to the agreement. This is perhaps the reason why the "courier" was transferred without the "luggage." But the agreement we must think was retained by him for an honest though perhaps mistaken purpose. He further testified that the papers looked as though they had been pinned together, and that they had "lots of pin holes in them." After reading the testimony of this plain, candid old man the conclusion is irresistible that if the papers were attached when they came into his hands and afterwards became detached that this resulted from inadvertence and not from any fraudulent intention.

The question in Law v. Crawford, 67 Mo. App. 150, cited and relied on by the defendants, related to the sufficiency of a pleading; while here it relates to the sufficiency of the evidence. We do not think the record discloses any evidence showing an alteration of either of the two papers or of both when attached or considered together or that in anyway varies to any degree the legal effect of them viewed as one instrument.

The defendants further contend that the note and supplementary agreement when taken and considered together as one entire instrument constituted a contract of indemnity and that the seventeen hundred dollars therein mentioned was a penalty and therefore there ought to be no recovery in any event on such contract in excess of the damage sustained by

reason of the breach. In order to understand his point it will be necessary to refer to certain facts which the evidence tends to establish.

It appears that one of the defendants, Geo. M. Pettit, was the owner of twenty-eight acres of land adjoining the city of Trenton. He bought the land on February 29, 1896, from F. A. Hazen. This land, together with a 42 acre tract adjoining it, owned by D. S. Hazen, a brother of F. A. Hazen, was at that time encumbered by two deeds of trust, both given by both of said Hazens to the New England Loan & Trust Company, one for $1,700 and the other for $170. Both of these deeds of trust were given for the exclusive benefit of F. A. Hazen, and D. S. Hazen received none of the money whatever and included his lands in the deeds of trust solely for the accommodation of his brother, F. A. Hazen. When Pettit bought the 28-acre tract he assumed and agreed to pay off both of said deeds of trust against said land, as a part of the purchase price thereof and it was specifically provided that both of them were made Pettit's debts and that he was to release the lands of D. S. Hazen from them.

Jaynes lived in Sullivan county and owned a farm of 160 acres in Grundy county worth $20 per acre, and adjoining the farm of defendant, Geo. M. Pettit. Pettit went to Jaynes and offered to trade his 28 acres for Jaynes' 160 acres. Jaynes came to Trenton to look at Pettit's land and they agreed on a trade. He asked $3,200 for his 160-acre farm but Pettit induced him to put it in at $3,000. The 28-acre tract was only worth from $40 to $50 per acre, as testified by all the witnesses, including Pettit himself. But he represented to Jaynes that it was worth $100 an acre and traded it and two acres additional to him at that price for his 160-acre farm, worth $3,200. After they had agreed on the trade, Pettit said that he had forgot to tell Jaynes that

the 28 acres were encumbered by a deed of trust for $1,700, but said nothing about the deed of trust for the $170. Jaynes at once said that that ended the trade, but Pettit then offered to give him a note for $1,700 secured by deed of trust on the 160 acres he was to get from Jaynes, to hold him harmless and protect him against the $1,700 deed of trust on the 28 acres and Jaynes agreed to this. He then deeded Pettit the 160 acres and Pettit deeded him the 28 acres, subject to the deed of trust for $1,700. In order to protect Jaynes against this $1,700 deed of trust and save him harmless, Pettit gave him a note for $1,700 secured by a deed of trust on the 160 acres and at the time agreed to pay off the deed of trust on the 28 acres.

In April, 1897, Pettit wanted to sell the land and went to see Jaynes several times about getting the deed of trust released and offered to give him other security. Jaynes could not leave home and told Pettit that he would be satisfied with what his agent Carpenter did. It was agreed between Pettit and Carpenter that Pettit and his brothers Abe and Howard Pettit, defendants, should give Jaynes a note to take the place of the note secured by the deed of trust on the 160, and the note here sued on was executed by the three Pettits and delivered to Carpenter for Jaynes. Carpenter then released the deed of trust on the 160 acres and took the new note in place of it. The testimony of all the defendants shows that they fully understood that they were giving Jaynes a note to protect him against the $1,700 encumbrance on the 28 acres he had bought of Geo. M. Pettit; that their note was to take the place of the $1,700 note and deed of trust on the 160 acres and that they were agreeing to release the $1,700 deed of trust on the 28-acre tract and see the land clear to Jaynes. Jaynes had nothing whatever to do with getting Abe and Howard Pettit to sign the note and they

both say that all they knew about the entire matter they learned from their brother, Geo. M. Pettit. The new note was given April 28, 1897, but was made to correspond with the old one released, that is, it was for $1,700, dated March 6, 1896, due three years after date, and bearing eight per cent compound interest. Accompanying the new note given by defendants to Carpenter, and in explanation of it was the supplementary agreement.

Some time after the new note was given, Jaynes discovered that the 28 acres, which he bought of Pettit, as well as the D. S. Hazen land, was being advertised for sale under the two deeds of trust for $1,700 and $170, held by the New England Loan & Trust Company, to protect him against which the defendants had given him their note, and he at once wrote Pettit, inclosing a copy of the notice of sale and requested him to pay off the deeds of trust and stop the sale at once, and protect him as they agreed to do. Pettit wrote in reply, asking Jaynes to meet him in Trenton and promising to fix the matter up. Jaynes could not come to Trenton, but Pettit came and had several conferences with Carpenter and D. S. Hazen, whose land was being advertised for sale with the twentyeight acres of Jaynes. Pettit refused to pay off the deeds of trust after both Jaynes and Hazen had requested him to do so and after he had been notified that the property was being advertised for sale. On January 31, 1898, Jaynes sent the loan company the full amount of the two notes and interest and received its receipt and a deed of release.

D. S. Hazen made Jaynes an offer of settlement which he accepted, but just when this was, whether before or after he had paid off the mortgage does not appear. He paid Hazen $675 for twenty-six acres of the forty-two acres included in the deeds of trust to the loan company and Hazen got the remaining sixteen acres of the tract released.

The law is well settled: "If one owning real estate encumbered by a mortgage, to secure his debt, sells it, and the vendee as a part of the purchase price agrees to pay the mortgage debt the vendor becomes the surety for the mortgage debt, and the vendee becomes the principal and the vendor will, as to such debt, be entitled to the same rights and remedies against the vendee that any surety has against his principal. And in such case the vendor is entitled on payment of the debt to be subrogated to the rights of the mortgagee. This rests upon the principle that in equity the property becomes a primary fund for the payment of the debt." Wayman v. Jones, 58 Mo. App. loc. cit. 318; Nelson v. Brown, 140 Mo. 590; Fitzgerald v. Barker, 70 Mo. 685; Orrick v. Durham, 79 Mo. 174; Heim v. Vogel, 69 Mo. 529.

When Geo. M. Pettit purchased of F. A. Hazen the twenty-eight acres of land and under a provision of the deed conveying it to him assumed the payment of the loan company debt secured by a deed of trust on the land, that debt became his debt for which he was liable in an action of assumpsit. When Jaynes purchased the same land of said Pettit and assumed under the deed the payment of the loan company's deed of trust debt thereon, it became his debt and he became liable therefor to the loan company. He paid for the twenty-eight acre tract purchased of Pettit the entire and full purchase price of three thousand dollars by conveying to Pettit 160 acres of land of like value. While Jaynes agreed to pay the loan company debt it was no part of the purchase price of the twenty-eight acres he had bought of Pettit for he had paid that in other lands of like value. As a consideration for this undertaking by Jaynes, Pettit executed to him a note for the same amount secured by a deed of trust on the land the former had conveyed to the latter.

This seventeen hundred dollar deed of trust lien debt represented the difference between the value of the interest Pettit assumed by his warranty deed to convey to Jaynes and the interest he in fact owned in it. In order to indemnify Jaynes against any loss that might result to him in consequence of the enforcement of the deed of trust or the payment and release thereof by him the note and deed of trust to secure was given on the 160 acres of land by Pettit.

If Jaynes paid off the deed of trust he was entitled to the indemnity. Had he assumed the payment of the deed of trust loan debt as a part of the purchase money—part of the consideration for the sale of the land to him—as was not the fact, it is clear under the rule previously stated he would as to Pettit have become the principal and Pettit the surety as to the assumed debt, but the facts, as we have seen, are quite different here, so that we do not think that they sustained the relation of principal and surety at all. Jaynes purchased and paid Pettit for a title in fee, unencumbered by liens of any kind. In consideration of the payment of the full purchase price Pettit agreed to clear away all encumbrances and to secure the performance of this agreement he excuted the note and deed of trust on the 160 acre tract. If he discharged the encumbrance on the land he had conveyed to Jaynes then that act discharged his obligation for indemnity and entitled him to a release of the deed of trust debt on the 160 acre tract but certainly he would not in consequence thereof have been entitled to be subrogated to the rights of the loan company.

But it may be insisted that Jaynes assumed to pay the deed of trust debt on the land and in consequence thereof it became his debt. It is true he thereby made himself liable to the loan company but it must not be forgotten that this debt was not assumed as part payment of the purchase money for

the land, but was assumed in consideration of the giving by Pettit of the note for a like amount and a deed of trust securing the same on his own land. The cancellation and discharge of the deed of trust on the 160 acre tract by the substitution in its stead of the indemnity provided in the personal contract executed by the defendants in no way altered or changed the rights of Jayne's existing before the substitution, as the recitals in the latter plainly indicate.

It follows from these observations that when Pettit failed to pay the loan company deed of trust and Jaynes was compelled to pay off and discharge the same that the latter's action on the contract for indemnity matured. This being so, what should have been the measure of his recovery? The amount of the note and accrued interest was manifestly the penalty provided in the contract. Was Jaynes entitled to recover the entire penalty resulting from the breach of the contract, or only such damages as he showed himself to have sustained? From the language employed in the contract, its subject-matter and the intention of the parties as disclosed by all the evidence and surrounding circumstances, we must think the amount of the note and interest must be regarded as a penalty for the non-performance of the contract. This being so, the amount of the recovery on the contract should be limited to the actual amount of damages sustained by reason of the breach. Ewing v. Reilly, 34 Mo. 113; May v. Crawford, 150 Mo. 531.

Accordingly, if Jaynes paid off the entire deed of trust debt to the loan company he would be entitled to recover out of the penalty provided the amount so paid by him as his damages.

Now it appears from the evidence that he did not pay the whole amount of such debt and interest, or, if so, D. M. Hazen, whose lands were also subject to the lien of the deeds

of trust securing its payment, in effect paid six hundred and twenty-five dollars of the amount to Jaynes, or, in other words, Jaynes was out on the transaction the amount of the note and interest less six hundred and twenty-five dollars which he received of Hazen. It seems from the evidence that Hazen who was anxious to have released the forty-two acres of land which he had encumbered with the deed of trust to the loan company to further secure his brother's debt, agreed with Jaynes if the latter would secure a release of the said deed of trust that he would sell him sixteen acres of the forty-two acre tract encumbered for thirteen hundred dollars and would accept in discharge of that amount a certain lot at four hundred dollars and two hundred and fifty dollars in cash. It appears that this agreement was carried out by both Jaynes and Hazen. It is thus seen that Jaynes did not sustain damages to the full extent of the penalty specified in the contract.

There is nothing in the evidence to justify the conclusion that the note was detached before maturity and sold to Cooper for value without notice and hence the case of Bank v. Stanley, 46 Mo. App. 440, is not in point. We think that the defendants were entitled to make as against the plaintiff any defense that they could have made against Jaynes.

It results that if plaintiff will within ten days hence file a *remittitur* in this court for $650 and the interest thereon from June, 1897, at six per cent per annum the judgment will be affirmed; otherwise, it will be reversed and cause remanded. All concur.