Maylan M. Henry and Katherine S. Host, Appellants, v. Everett Steward, Respondent, No. 42728—250 S. W. (2d) 527.

Division Two, June 9, 1952.

Motion for Rehearing or to Transfer to Banc Overruled, July 14, 1952.

214

*Arthur T. Brewster* and *O. A. Tedrick* for appellants.

*Bloodworth & Bloodworth* for respondent.

TIPTON, J.—This is an action for partition of certain real estate situated in Butler County, Missouri. The appellants also ask that the respondent account to them for their share of the rents and profits that the respondent [528] realized from this land, and that he account for personal property owned by their father at the time of his death. Respondent's amended answer admits that he and the appellants own the real estate but denies that appellants are entitled to an accounting for rents and profits or any personal property owned by their father at the time of his death. In his answer he asks that he be reimbursed for improvements he placed upon the real estate and for taxes and notes secured by deeds of trust on real estate he has paid. The trial court ordered partition of the real estate, denied appellants' prayer for an accounting for personal property and rents during the lifetime of the mother of the parties, charged against respondent $1500 a year rent since the death of their mother, but allowed respondent for improvements he had put upon this property and for taxes and the deed of trust he had paid. From that judgment the appellants have duly appealed.

The evidence tends to show the following facts: The appellants and respondent are the children of Edward Steward, who died March 29, 1938, and Bertha Steward, who died February 28, 1947; no probate proceedings were had upon the estate of Edward Steward but letters of administration were granted to respondent on the estate

of Bertha Steward on April 18, 1949; at the time of Edward Steward's death he and his wife Bertha Steward owned 260 acres of land as tenants by the entirety and he owned 80 acres, but Bertha Steward's dower interest had not been set aside for her in this 80 acre tract. The father, Edward Steward, was killed instantly in a cyclone which destroyed practically all the buildings on the land, the fences and most of the farming equipment on the farm. At the time of the cyclone appellant Maylan Steward Henry was over 23 years old and lived in St. Louis, Missouri; appellant Katherine Steward Host was 15 years old and she continued to live with her mother and brother, the respondent, until she finished school some two or three years later. Then she went to St. Louis. The evidence shows that for about 5 years prior to his death Edward Steward was not in good health and during this time he and respondent operated the farm as partners. Most of the work on it was performed by respondent.

The personal property which included the farming equipment and livestock was owned by the father and respondent. The personal property was worth about $2675, and was covered by a chattel mortgage executed by the father and respondent. The notes secured by chattel mortgages including interest exceeded the value of the personal property.

The value of the land after the cyclone was $5000, but there was a purchase deed of trust for $4800, which was paid by respondent between the time of the death of his father and the death of his mother. In fact, the note and the interest paid by the respondent amounted to $6763.88. During this time this respondent paid in excess of $1149.94 for taxes due on this property.

Shortly after the cyclone the Red Cross donated $2500 to the family and this money was used to help replace buildings on the place. This respondent improved the farm and made a home for his mother and his family, also for his younger sister until she finished high school. The evidence shows that respondent not only farmed the land owned by his mother but also farmed several hundred acres owned by other persons. He continued to improve this property, built fences and buildings he used in his farming operations which were valued at $18,470 at the time of the death of his mother.

The trial court found that these appellants were not interested in the farm or farm life, but their mother continued to live with respondent and his family and was satisfied with the arrangements she had with respondent; in fact, she encouraged her son in his farming operations. We think the evidence fully sustains the trial court's findings.

The trial court found that the respondent was entitled to a lien on this property in the sum of $23,883.82 for improvements that he had made on this farm, reimbursement for the taxes he had paid and for the notes and interest secured by a deed of trust that was on

this real estate. The court found that the reasonable value for the rent on this place was $1500 a year [529] after the mother died, which would amount to $6000 at the date of the judgment, and that each appellant have and recover $2000 from respondent.

Appellants contend that the respondent is not entitled to the value of the improvements placed on the land. However, the trial court found respondent in good faith believed he was the owner from the actions and statements of his mother and also with the full knowledge and acquiescence of the appellants. The title to the real property upon which the respondent made these improvements was in the mother of the parties from the death of her husband until her death when respondent and appellants became the owners as tenants in common. The testimony was that very shortly after the cyclone appellant Mrs. Henry told the respondent that he should let the farm go for the mortgage as it was not worth the amount of the mortgage. Both appellants knew that he was making these improvements and at no time did they protest, nor did they make any contribution toward these improvements. The whole family benefited by these improvements; it provided a home for their mother during her lifetime, for the younger sister for two or three years, and for this respondent and his family. The real fact is that if respondent had not paid the note secured by the deed of trust and the taxes and made the improvements, there would not have been a home for the mother nor any land to partition. Respondent stated he considered the land belonged to him because he bought and paid for it. While there is some confusion about the question of whether respondent paid his mother any rent for the place, yet he did testify in response to questions asked by the court that the money he gave her and the home he provided for her was in fact for her support. He testified as follows: "A. Well, it was my understanding, if I would do this and pay the mortgage off, I could have the place. It was for her to have a home and me to have a home." He also testified: "A. I did it because it was my mother and so we could have a home. She told me that if I would do that and get this mortgage paid out, where we would have a home, that I could have it."

The respondent knew that he did not have the legal title to this land, that title was in his mother, but we think the evidence is sufficient to show that he thought in good faith he had the equitable title to the land. This fact is established by the weight of the evidence.

We are unable to distinguish the case at bar from our case of Adams v. Adams, 348 Mo. 1041, 156 S.W. 2d 610, l.c. 618. In that case the son bought and paid for the lots but had the title put in the name of his father who later deeded them to the mother. After her death, in a partition suit brought by one of her heirs, the son contended he had a lien on the property for taxes paid both prior

and subsequent to his mother's death. We sustained his contention and reversed and remanded the case. In so ruling, we said:

"We think the Walker case last cited accords with the equities in the present suit and states the rule that we should follow. This conclusion is not in harmony with the intimation in Carver v. Coffman, 109 Ind. 547, 549, 10 N. E. 567, 569, and Cole v. Johnson, 53 Miss. 94, 102, that color of title is necessary to entitle a bona fide claimant to an accounting in partition for improvements made or taxes paid. But we can see no reason why such relief should be restricted to the holder of a supposed paper title or color of title. *If, as all the cases say, the rule is founded on equitable considerations why should it not extend to equitable titles? The appellant in this case was no trespasser. He had provided a home for his father, mother, two sisters and respondent's deceased husband.*" (Italics ours.)

That case was again appealed to this court and our opinion is reported in 350 Mo. 152, 165 S.W. 2d 676. We held that after our remand to the trial court this son could amend his petition and make a claim for improvements he had made upon the lots in question, and again remanded the case. In that opinion we said (1.c. 676):

"We also agreed with the conclusions reached by the Supreme Court of Arkansas in Walker v. Eller, 178 Ark. 183, 10 S.W. 2d 14, under which appellant would also have been entitled to recover money paid by him in improving the real estate, if he had asked for same in his answer. In the opinion we said [348 Mo. 1041, 156 S.W. 2d 618]: 'He did not ask an accounting for improvements in this case but did for taxes he had paid, * * *. We hold an accounting should be made of all taxes on the lots shown by this record to have been paid by appellant both before and after the mother's death in 1935.' "

On the third appeal of this case we transferred it to the Springfield Court of Appeals for lack of jurisdiction. Our opinion is reported in 352 Mo. 389, 177 S.W. 2d 483. The Springfield Court of Appeals opinion is reported in 180 S.W. 2d 241. That court held that the trial court properly found under the evidence that the son was entitled to recover for improvements placed upon the lots because he acted in good faith and honestly believed he was the equitable owner of the land.

The improvements, the payment of taxes and the payment of the notes secured by a deed of trust by this respondent were done with the knowledge and acquiescence of his two sisters, the appellants. Certainly, under the facts of this case, this respondent's actions could not be classed as that of a mere volunteer.

Appellants rely upon our cases of Otten v. Otten, 348 Mo. 674, 156 S. W. 2d 587; McAboy v. Packer, 353 Mo. 1219, 187 S. W. 2d 207; and Martin v. McCabe, 358 Mo. 118, 213 S.W. 2d 497. These cases are not in point. In each case the claimant was relying on a defective

record title, which defect was known to the claimant or he had sufficient knowledge to put him on inquiry before he made the improvements.

We also find that under the weight of the evidence the respondent did not over-improve this property as contended by appellants.

The improvements made by respondent, his paying the taxes and the note secured by a deed of trust, preserved this land for these appellants, and we hold the trial court's allowance for these improvements was proper.

From what we have said, it follows that the trial court's allowance of credit to respondent for the payment of taxes and the notes secured by a deed of trust was also properly allowed.

After the evidence was heard the appellants filed an amended reply whereby they contended that under the five year statute of limitations respondent can recover only for the improvements that he put on the farm within the five years preceding the filing of this partition action. The respondent's answer converted this action into an equitable one. Grogan v. Grogan, 177 S.W. 649. Therefore, this action is wholly governed by equitable consideration. The first maxim of equity is that he who seeks equity must do equity. The rule in this state is that in equitable partitions the statute of limitations bars neither the claim for improvements nor the claim for rent. Byrne v. Byrne, 289 Mo. 109, 233 S.W. 461; Adams v. Adams, supra, 180 S.W. 2d 241.

The tract of land upon which these improvements were made was the 260 acre tract held as an estate by the entirety by the father and mother of the parties to this action. Upon the death of the father, their mother became the sole owner. The mother had a quarantine right in the 80 acre tract which was owned only by the father, since no dower had been assigned to her. Under these facts the mother had the exclusive right to the use of both tracts of land during her life. Byrne v. Byrne, supra.

Appellants contend that respondent should account for the rents of this farm during the lifetime of their mother. The evidence clearly shows that the mother did not expect respondent to pay her rent for the farm, that through his efforts and work he supported his mother, paid her medical bills, and that she was satisfied with and encouraged the arrangement she had with respondent. [531] In fact, she did not expect or consider she was entitled to any money for rent. The trial court did charge the respondent with rent at the rate of $1500 a year beginning at the death of the mother. Under the evidence, this is the maximum rate of rent that the court could fix.

Appellants' claim for their share of the personal property owned by their father at the time of his death cannot be allowed. We have already stated that it was jointly owned by the father and respondent, and was mortgaged for more than it was worth. Moreover,

under the evidence the trial court correctly ruled the net value of the personal property did not exceed a widow's allowance and that their mother received the benefit of it during her life.

It follows the judgment of the trial court should be affirmed. It is so ordered. All concur.