Scott GOFORTH, Plaintiff-Respondent,

v.

Edna ELLIS and Frank Ellis, Defendants-Appellants.

No. 45358.

Supreme Court of Missouri,

Division No. 1.

April 8, 1957.

Hugh B. Downey, Milton A. Abrams, Downey, Abrams & Sullivan, Kansas City, for appellant.

Gresham, Boughan & Whipple, Walter J. Gresham, Kansas City, for respondent.

HYDE, Judge.

Action to partition real estate in Jackson County, in which defendant Frank Ellis claimed an undivided interest. The court adjudged that Frank Ellis had no interest in the property; that plaintiff and defendant Edna Ellis each had an undivided one-half interest; that the interest of Edna Ellis should be charged with a total amount of $3,799.33; and that the property should be sold and the proceeds divided in accordance with their interests and the amount of the equitable charges made in the judgment. Defendants have appealed from this judgment.

Neither the petition nor the answer and cross petition made any definite claims of specific interests but all parties asked the court to ascertain and determine the interests of the parties. The deed to the property was never offered in evidence, so we do not know what its provisions were. However, according to the testimony on both sides, the grantees were plaintiff and Edna Ellis, who was plaintiff's first cousin. Furthermore, according to the pleadings of all parties, Frank Ellis, husband of Edna Ellis, had an equitable interest of some kind in the property by reason of making payments of monthly installments on the part of the purchase price secured by a trust deed thereon signed by all three parties. Nevertheless, plaintiff now contends Frank Ellis has no interest and the court so found, while he contends he has an equal interest with plaintiff. Thus title to real estate is involved so as to give this court jurisdiction under Sec. 3, Art. V of our Constitution, V.A.M.S.

The property was purchased in March 1950, for $6,500. Plaintiff paid $2,000 down and all three parties signed a note for $4,500, secured by a deed of trust on the property, payable in monthly installments of $50, which applied on both interest and principal. These payments were all made by Frank Ellis and at the time of the trial in August 1955, he had paid a total of $3,-200 of which $1,131.68 had been applied on interest and $2,068.32 on principal. Frank Ellis had also paid $515.40 for a new furnace, for which all three parties had signed a note in that amount, dated August 2, 1951 (the principal being payable in 30 monthly installments) with interest at 5% per annum; $319.79 for a retaining wall, of which defendants paid $50 down and gave their note, dated April 24, 1953, for the balance (payable in 24 monthly installments); and $300 for repairs on the house foundation, paid March 18, 1955, after this suit had been commenced. Defendants also, on March 31, 1955, obligated themselves to pay $405 for storm windows and screens.

The main difference between the parties is the construction of the oral agreement between them. Plaintiff was a retired army Master Sergeant. He had a room in the house and had access to all of it, sometimes entertaining friends there. He made annual trips to the Walter Reed Hospital in Washington, D. C. and visited other cities each year. He estimated that he was away about four and a half months a year, while defendants' estimate was about four weeks. Edna Ellis used one room for a part time beauty shop and at times other relatives of the parties also lived in the house. Plaintiff paid the taxes and insurance and defendants paid the electric, gas and telephone bills. Defendants furnished plaintiff most of his meals but he said he spent $8 to $10 weekly for groceries he brought in and ate part of his meals out. Plaintiff cut the grass, washed windows and did other work about the place. Plaintiff's brief advances the theory (apparently followed in the judgment) that the $50 monthly payments on the $4,-

500 purchase mortgage note (signed by all three parties) was to be considered as rent which was due from defendants to plaintiff and, therefore, defendants were entitled to no interest in the property by reason of making these payments. However, plaintiff did not so testify. He said he considered the monthly rental value of the place to be $100 and said his share of it would be $50. Plaintiff testified further as follows:

"Q. The Ellises were to make the monthly payment. Was that in lieu of rent to you, in place of rent to you? A. No, that wasn't no rent to me, to make the $50.00 a month payment to the man that owned the property.

"Q. And pay you $2,000.00 back for your investment? A. Yes, sir. * * *

"Q. Did you understand that the $50.00 a month payment on the note was made for your benefit? A. It was made for my benefit and their benefit, too, because they had an interest in the house as far as living there. * * *

"Q. Was it your agreement that the $50.00 payment by them on the note was not to give them any interest in the property? A. Not to give them no interest in the property?

"Q. Was that your agreement? A. Well, no, I wouldn't agree on that. If they paid it they had an interest in there. They didn't pay no money on the down payment, wasn't no money paid on the down payment. I paid the down payment on it.

"Q. Do you understand then that the payments made by them on the balance gave them an interest in this house? A. If they paid an equal amount I had in there they would have interest in it.

"The Court: Let me ask you, suppose they paid half of the amount you had did you think they had that

amount of interest in it or do you think they had any interest in it? A. If they paid $2,000.00, I believe they had as much interest in it as I did * * *.

"Q. There was no agreement to pay you any rent? A. No agreement.

"Mr. Gresham: No express agreement. That is an implied agreement that the petition refers to. * * *

"Mr. Gresham: Yes, we don't allege there was an expressed agreement, we are pleading implied agreement from the time they occupied the property."

Defendants' testimony was that plaintiff said to Edna Ellis: "I will furnish a down payment if you get Frank to agree to keep the note up until it equals up to what I made as a down payment and from there we will go fifty-fifty." Defendants' construction of this was stated by Frank Ellis as follows: "During the down payment he and my wife would be owners until I made a payment of $2,000.00, after I paid $2,000.00 which would include utilities, expenses on repairs and monthly payment, then my wife and I would own half interest and Mr. Goforth half." Thus defendants claimed the entire $50 payment (including both interest and principal) was to be considered so they would have an equal interest when $2,000 total had been paid and they also claimed the amounts they paid each month for utilities and the value of meals furnished plaintiff (claimed to be $15 per week) should be considered in computing the total for which they should have credit, as well as the amounts paid for the furnace, retaining wall, basement repairs, screens and storm windows.

The charges made by the court in its judgment against the undivided half-interest of Edna Ellis was as follows: "That the interest of defendant Edna Ellis be charged with the sum of $2,000.00, which should have been paid to the seller at the time of the purchase of said property; that plaintiff is entitled to credit against the interest

of Edna Ellis for one-half of the sum of $334.57 which plaintiff has paid for taxes, and one-half of the sum of $64.05 which plaintiff has paid for insurance, being respectively the sums of $167.28 and $32.03. Plaintiff is also entitled to credit against the interest of said defendant for one-half of the sum of $2,068.32 paid by defendant Edna Ellis on the deed of trust as an agreed rental to plaintiff, and one-half of the sum of $1,131.68 paid as interest on said debt as agreed rental to plaintiff, said sums respectively being $1,034.16 and $565.84; the total of said charges against the interest of said defendant being $3,799.31."

 It was obviously incorrect to make a charge against defendants for rent. Not only did plaintiff testify there was no agreement for defendants to pay him rent but his counsel also admitted there was no such agreement and stated he was relying upon an implied agreement from the occupation of the premises by defendants. As shown by the authorities hereinafter cited, there is no such implication from occupation by cotenants when both are occupying the premises. "The characteristic attribute of a tenancy in common is unity of possession. This means that each of the coowners has a separate and distinct claim to some fraction of the ownership involved, but shares with his cotenants one single right to possession, which right applies to every part of the affected property." Powell on Real Property, Sec. 601. Even "a tenant in common occupying the whole is normally held not liable to his cotenants for the value of its use and occupation, or for the economic benefits so obtained." Although "sometimes the exclusive possession by one of the cotenants is sanctioned by an agreement of all the cotenants"; nevertheless, "in the absence of such an express agreement, the relation between an occupying cotenant and the out-of-occupancy other cotenants is not that of landlord and tenant." Powell on Real Property, Sec. 603; see also Powell, Sec. 615; 14 Am.Jur. 93–95; Secs. 23–24; 68 C.J.S., Partition, § 138, p. 217; 86 C.J.S., Tenancy in Common, §§ 25–26, pp. 383–386. "The generally accepted rule at common law is that a tenant in common who occupies all or more than his proportionate share of the common premises and who has not agreed to pay therefor or ousted or excluded his cotenant or cotenants is not liable, because of such occupancy alone, to his cotenants for rent or for use and occupation." 86 C.J.S., Tenancy in Common, § 46, p. 407; see also 14 Am.Jur. 102, Sec. 35; Freeman on Cotenancy and Partition, Secs. 258, 274–275; Ragan v. McCoy, 29 Mo. 356, 367; Lilly v. Menke, 126 Mo. 190, 218, 28 S.W. 643, 994; Bates v. Hamilton, 144 Mo. 1, 13, 45 S.W. 641.

 This is explained in Ragan v. Mc-Coy, supra, as follows: "Each tenant is entitled to the possession, and may enter and enjoy if he will. As each tenant is entitled to his share of every part of the undivided premises, one tenant can not gain an exclusive right to any part of them. He may enter and enjoy a portion less than his share, yet the other tenants will be entitled to their share of that portion, as each tenant is seized of his portion of every part of the undivided premises; so that if the law were otherwise, one tenant might refuse to enter, and the other could not enjoy any portion, even one less than his share, without making himself liable to the others for a share of the profits, and that without regard to the fact whether the occupation was beneficial or otherwise to the premises. Of course, if one cotenant ousts another, he will be liable in an ejectment, or subject himself to the law of forcible entries. But where the land is free to all, and each may enter if he will and enjoy his rights undisturbed, there is no reason in compelling him, who does enter, to pay rent to him who neglects or obstinately refuses to do so." As held in such cases as Byrne v. Byrne, 289 Mo. 109, 233 S.W.2d 461 and Martin v. Martin, 218 Mo.App. 617, 266 S.W. 336, in partition equity may set off rental value against improvements and taxes and other charges paid by one in exclusive possession, although he has not ousted

his cotenant; but we know of no Missouri case which authorizes this when both were occupying the premises.

 Thus it is clear the court erred in charging the interest of Edna Ellis with any rent for the period prior to the commencement of this suit. It is likewise clear the court erred in charging her interest with $2,000 to equal the amount originally paid by plaintiff (on the theory that what defendants paid on the mortgage debt should be considered only as rent) and giving defendants no credit for anything paid on the mortgage debt when the evidence showed Frank Ellis had paid on the principal of the purchase mortgage debt an amount equal to the $2,000 down payment made by plaintiff, and had kept the interest paid on the whole $4,500 debt. Defendants should also have credit for one-half of the amounts paid for the furnace, the retaining wall and the basement wall repairs. As to the furnace, plaintiff not only approved it but also signed the note given to pay for it. As to the retaining wall, the evidence certainly indicates plaintiff approved it and as to the basement wall repairs, the evidence shows they were necessary not only to preserve the house but also to prevent great damage to it. The right to compensation for improvements, made without the consent of cotenants, is not a legal right but may be enforced in equity for payment out of proceeds of partition, when they are made in good faith and are of a necessary and substantial nature, materially enhancing the value of the common property, where the circumstances show that it would be equitable to do so. 14 Am.Jur. 115–119, Sec. 49; 40 Am.Jur. 32–38, Secs. 39–45; 68 C.J.S., Partition, § 139, p. 221; 86 C.J.S., Tenancy in Common, § 68, p. 450; Annotations 1 A.L.R. 1189, 122 A.L.R. 234. The evidence indicates these charges were reasonable and we hold the circumstances of this case are such as to make it equitable to require plaintiff to pay half of the cost of these improvements. See also O'Donnell v. Mathews, 221 Mo.App. 657, 284 S.W. 204; Armor v. Frey, 253 Mo. 447, 161 S.W. 829; Lester v. Tyler, Mo.Sup., 69 S.W.2d

633, 638; Adams v. Adams, 348 Mo. 1041, 156 S.W.2d 610, 617; Henry v. Steward, 363 Mo. 213, 250 S.W.2d 527, 529. However, we hold defendants should not be allowed any recovery or credit for amounts paid for screens and storm windows (which can be removed) or for amounts paid for utilities (all of which were mainly for their own comfort and convenience) or for meals furnished plaintiff, of which no account was kept and no intention to make a charge against him indicated.

 We hold that Frank Ellis fulfilled his obligation to pay an amount on the principal of the purchase price mortgage equal to the amount paid down by plaintiff. Therefore, the present judgment and decree must be reversed and a new judgment entered, adjudging plaintiff to be the owner of an undivided one-half interest in the property and adjudging the defendants jointly to be the owners of an undivided one-half interest therein. The new judgment should also adjudge that prior to the trial of this suit, plaintiff had paid $2,000 on the $6,500 purchase price and that defendants had paid $2,000 thereon and that of the remaining balance due, plaintiff owed $1,250 and defendants owed $1,250. As to interest paid, defendants are not entitled to credit for the amount of interest due and paid on the $2,000 which Frank Ellis was to pay to equal the down payment made by plaintiff. However, since the rest of the purchase mortgage debt ($2,500) was the debt of plaintiff as well as defendants, they should have credit for one-half of the interest due and paid by them on that amount of the debt, and the judgment should so state. The judgment should also provide that plaintiff should have credit, against the interest of defendants in the proceeds of the partition sale, for one-half of the amounts paid by him for taxes and insurance and that defendants should have credit against the interest of plaintiff therein for one-half the amounts paid by them for the furnace, the retaining wall and the basement wall repairs, and for one-half of any amounts they have paid for taxes or insurance. It should further provide that

defendants should have credit for one-half of any amount they have paid or may pay on the remaining $2,500 principal of the purchase mortgage debt, and interest thereon, since this suit was commenced and before the sale in partition, over and above the $2,000 they were required to pay to equal plaintiff's down payment. However, defendants should be charged with one-half of the rental value of the premises from the time, after the commencement of this suit, when they ousted plaintiff from possession by changing the locks so he could not enter.

The judgment is reversed and the cause remanded with directions to enter a judgment to conform to this opinion as to the interests of the parties in the property, and as to allowances and charges for and against each and all of the parties and to carry out the order of sale in partition.

All concur.