Owen W. HARTOG and Eleanor J. Hartog, his wife, Plaintiffs-Respondents,

v.

Paul SIEGLER et al.,
Defendants-Appellants.

No. 40956.

Missouri Court of Appeals,
Eastern District,
Division One.

April 14, 1981.

Michael O'N. Barron, St. Louis, for defendants-appellants.

John B. Berkemeyer, Hermann, for plaintiffs-respondents.

KELLY, Chief Judge.

Respondents Owen and Eleanor Hartog brought an action in the Circuit Court of Gasconade County for partition of a 126 acre tract of land situated in Gasconade County and asserted an equitable lien against the property for reimbursement of improvement, maintenance and repair expenditures. The Hartogs and appellant, Paul Siegler, each held an undivided half-interest in the property, and all co-tenants stipulated to the partition sale. Owen Hartog and his sister, Harriett Siegler, had acquired the property from respondent, Haroco Corporation in 1967. At the sister's death in 1968, her son, appellant Paul Siegler, had inherited her half-interest in the property in trust, and Hartog had been appointed trustee. Respondent Haroco Corporation intervened in this action to assert a lien against the property for Haroco's payment of a promissory note on behalf of the co-tenants. The Circuit Court of Gasconade County awarded the Hartogs $15,-243.62, plus reasonable attorney's fees from the proceeds of the sale of the tract, and also awarded Haroco $15,128 from said proceeds.

Appellants claim that Hartog incurred expenses as a volunteer, breached his fiduciary duty as trustee to render accurate accounting of his trusteeship, and therefore was not entitled to reimbursement. They also contest particular expenses claimed by Hartog. Appellants assert that Haroco's claim was based on insufficient evidence as to Harriett Siegler's intent to pledge the property as security with respect to payment of the note.

Haroco Corporation is a closed Missouri corporation whose principal dealings are in real estate. In 1967 Owen Hartog, his sister, Harriett Siegler, and their mother held all of Haroco's common stock. Hartog held 40% of the stock and was president of the corporation; his sister held 30% and was secretary. In April, 1967, Haroco acquired by warranty deed the 126½ acre farm which is the subject of this suit, subject to a

first deed of trust in the amount of $12,-500.00 in favor of one Val Schmidt due in 1969 with annual interest. Haroco also spent $753.00 in earnest money, closing costs and recording fees.

At that time the house on the tract had been "uninhabitable," and the barn had "required a lot of work." Hartog and his sister orally agreed to modernize the farm for use as a weekend residence, and they began to make repairs and improvements. They continued an arrangement by the previous owner with a local farmer who sharecropped the ground and paid rent for pasture land. On October 5, 1967, Hartog and Mrs. Siegler borrowed $7,000.00 from a bank to reimburse themselves for personal expenditures on the property. After Hartog personally had spent $5,899.33 on building materials, they initiated a separate checking account for all farm expenditures.

On or about October 30, 1967, Haroco conveyed the farm by warranty deed to the Hartogs and Harriett Siegler subject to the deed of trust. Hartog and Mrs. Siegler agreed to assume payment of the note and to cover Haroco's acquisition expenses as consideration for the property. There was no written closing statement, nor did any money change hands. Haroco, however, subsequently paid the periodic interest on the note and paid it off in 1969. Harriett Siegler's estate files and estate tax return noted an indebtedness due on one-half of a deed of trust on a piece of property. The Circuit Court found that the circumstances of the conveyance and the estate records evidenced an intent by the parties to the conveyance that the property stand good for the co-tenants' obligation to Haroco.

Harriett Siegler died testate on February 1, 1968. She left all of her real and personal property in trust for the benefit of her 12 year old son, appellant Paul Siegler. The boy thereafter lived with his father, Robert Siegler, who had been divorced from Harriett Siegler several years prior to her acquisition of her interest in the 126 acre tract of land in issue. Her will named Hartog as executor and trustee. Her estate was closed in November, 1971. Hartog claims to have resigned as trustee prior to this suit, and appellants have denied that there was an effective resignation. Hartog did not render any accounting to the probate court. The trust terminated at Paul's twenty-first birthday, sometime after initiation of this suit.

After his sister's death and until initiating this suit Hartog continued to make improvements and repairs to the property. He spent most of his weekends working there. Out of his farm checking account he paid for telephone and electric service, gasoline and fuel oil, insurance, taxes, building materials, and excavation costs, as well as for seed and fertilizer for the tenant farmer's use. The farming operation produced income of $11,263.15 between May, 1967, and December, 1975.

Hartog did not consult appellants with respect to any of the work being done on the property, nor did he expressly advise appellants that the property was included in the trust assets. He knew, however, that the trust's attorney had informed Robert Siegler of the existence of the trust. Robert Siegler claims he did not remember whether the attorney listed the farm among the trust assets. Appellants were aware of the farm's existence, however, and had visited it once in 1968. In 1974 Hartog told Robert Siegler that he had made improvements to the property and offered to purchase appellants' interest. His offer was refused. Appellants visited the farm for the second time in 1976. By that time the property had been considerably improved.

The Circuit Court found that the Hartogs had not been reimbursed for the following expenditures: fencing and materials ($1,227.84), gasoline ($1,075.65), excavating ($476.50), taxes ($2,273.34), insurance ($1,686.00), grain and seed ($2,999.94), fertilizer and lime ($1,413.25), building supplies ($12,847.31) and half the amounts expended for fuel oil ($1,022.35), electricity ($881.65), light, heat and power ($602.93). This total credit was offset against the property's income ($11,263.15) for a net credit of $15,-243.62.

The court further found that the improvements materially enhanced the property's value by at least the same amount as the expenditures claimed by the Hartogs; that the expenditures were reasonable and necessary for the maintenance and repair of the property, and that the credit was an equitable lien against the property, expended by respondents in good faith that they would be reimbursed upon sale of the property. The court ordered the Hartogs' expenditures, as well as costs and reasonable attorney's fees to be paid from the partition sale proceeds.

■ In this court-tried case the scope of appellate review is circumscribed by Rule 73.01 and the Supreme Court's construction of that Rule in *Murphy v. Carron*, 536 S.W.2d 30, 32[1, 2] (Mo. banc 1976). We must uphold the judgment of the trial court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law or unless it erroneously applies the law. We are further charged with exercising the power to set aside a decree or judgment on the ground it is against the weight of the evidence with caution and only when we believe that the decree or judgment is wrong.

■ Bearing in mind these restrictions on our review of their partition decree, we undertake our review of this decree by taking cognizance of the rule of law that a tenant in common's right to contribution from his co-tenant may extend to payments made for repair and improvements, taxes and other expenses, depending upon the nature and circumstances of the particular expenditures. *Hahn v. Hahn*, 297 S.W.2d 559, 567[1, 2] (Mo. banc 1957). Upon partition, advances for repairs made in good faith for the substantial benefit of all co-tenants, may be allowed. 68 C.J.S. Partition § 136. Decisions of Missouri Appellate Courts hold that a co-tenant in possession may be compensated in equity for improvements to co-tenancy property where he has a good faith belief that he has full title to the property. *Buschmeyer v. Eikerman*, 378 S.W.2d 468 (Mo.1964); *Henry v. Stew-*

*ard*, 363 Mo. 213, 250 S.W.2d 527 (1952); or where the other co-tenants expressly or impliedly consent to the improvements. *Hahn v. Hahn*, supra; *Goforth v. Ellis*, 300 S.W.2d 379 (Mo.1957); *Henry v. Steward*, supra.

■ The right to compensation for improvements made without the consent of co-tenants is not a legal right, but may be enforced in equity for payment out of partition proceeds when said improvements are made in good faith, are of a necessary and substantial nature, materially enhance the value of the property, and the circumstances show that it would be equitable to do so. *Beckham v. Eggleston*, 341 S.W.2d 337, 341[6] (Mo.App.1960). 1 A.L.R. 1189; 68 C.J.S. Partition § 139; 122 A.L.R. 234.

■ We believe there is substantial evidence to support the trial court's finding that the expenditures made by the plaintiffs were necessary for the maintenance and repair of the real property ordered partitioned and that said expenditures were made in good faith by the plaintiffs.

Owen W. Hartog and Harriett H. Siegler, his sister, agreed to improve this property for use as a weekend home, made plans, took out a loan to reimburse themselves for expenses thereby incurred, and actually worked on the property. Clearly Mr. Hartog had his sister's consent for those expenditures made prior to Mrs. Siegler's death in 1966 for those improvements made to the property up to that time.

After Mrs. Siegler's death Mr. Hartog proceeded to carry out the plans they'd made for the property and thereby enhanced its value. There was no evidence that these expenditures were wasteful or frivolous, nor that he should have been put on notice that Paul Siegler had any objection to the work being done on the property. Despite the fact Paul Siegler saw the property in 1968, no objection to the improvements was made until 1974. As trustee of the trust estate Mr. Hartog would have been required to make an accounting to Paul Siegler had there been a request for one. *Morrison v. Asher*, 361 S.W.2d 844 (Mo.App.1962); Bogert Trust and Trustees

(Second Edition) § 961, pp. 2–10. Neither Paul Siegler nor his father requested an accounting until Mr. Hartog instituted this action for partition.

We further conclude that the record supports the trial court's finding that Mr. Hartog was not acting as a volunteer and that he entertained a good faith expectation of reimbursement if and when he property should be sold. He kept detailed records for the property held in co-tenancy and maintained a separate account for expenditures made on this property. The loan he and Mrs. Siegler made to reimburse themselves for expenditures made on improving the property and the opening of a separate bank account for that purpose supports this finding also, particularly, inasmuch as all income from this property was deposited in that account. These steps clearly indicate an intention to maintain the co-tenancy as a separate entity from his personal finances, as well as those of Mrs. Siegler.

With respect to appellant's contention that the evidence is insufficient to support the trial court's conclusion that these expenditures materially enhanced the property's value at least to the extent of said expenditures, we believe that it has no merit.

■ Recovery under an equitable lien depends upon what is found to be just and equitable in each particular case. In some instances the amount to be awarded may be the cost of the improvements; in other cases it may be more equitable to allow recovery of the amount by which the property's value was enhanced solely by reason of the improvements. Enhancement value is always the upper limit of recovery, to prevent reimbursement for wasteful expenditures. *Buschmeyer v. Eikerman,* supra, l.c. 479[7]; *Sires v. Clark,* 132 Mo.App. 537, 112 S.W. 526, 527[1] (Mo.App.1908).

■ Furthermore, it was within the trial court's discretion to stay its final order until after the partition sale and to employ the sale price as a factor in determining the final partition of proceeds; he was not required to make a final determination based on the trial record alone. *Lester v. Tyler,* 69 S.W.2d 633, 638[15] (Mo.1934). This property, which was purchased in 1967 for approximately $13,000.00 was purchased by Robert L. Siegler, Paul D. Siegler, Harold B. Flora and Maria Flora at the partition sale for $81,000.00. While inflation may have contributed to some extent to the increase in value of this property, the improvements made by Mr. Hartog also contributed to this appreciation, or at least we conclude the trial court could have found so. At the time the property was purchased by Mrs. Siegler and Mr. Hartog the house was described as dilapidated and uninhabited; immediately prior to the time of trial the house was insured for $22,000.00. The improvements necessarily contributed to this valuation. After deducting taxes, insurance and farming expenditures from the $26,506.00 Mr. Hartog made, the balance remaining equals $18,134.00 for repairs and improvements. We conclude that the trial court did not err in finding that these expenditures enhanced the value of the property in this same amount.

Appellants claim that Mr. Hartog's expenditures for taxes, insurance, gasoline, fuel oil, electricity, light, heat and power were not recoverable because he was in possession and they were made for his sole benefit is also without merit.

■ On partition of property held in co-tenancy, an occupying co-tenant may claim reimbursement for advances made for the benefit of the commonly held property; including repairs, taxes and insurance, and his co-tenant will be entitled to set off against such claims rents and profits for the period of his occupation. 68 C.J.S. Partition § 141; *Beckham v. Eggleston,* supra.

The trial court here deducted the farm's profits from respondents' claim for reimbursement, but correctly allowed recovery for those expenditures benefitting the co-tenancy.

■ When a co-tenant pays taxes due on the jointly owned property he acts for the benefit of all co-tenants by preventing a lien from attaching against the property.

*Smith v. Mount,* 149 Mo.App. 668, 129 S.W. 722, 725 (1910). It was not, therefore, error for the trial court to reimburse respondents for these taxes. *Goforth v. Ellis,* supra; *Henry v. Steward,* supra.

■ Where insurance benefits all of the interests of the co-tenants, premiums therefore are likewise recoverable. *Goforth v. Ellis,* supra.

■ As trustee for Paul Siegler, Mr. Hartog was under a duty to protect his nephew's interest in the property, *Estate of Luyties v. Scudder,* 432 S.W.2d 210, 214[3] (Mo.1968). The absence of co-tenancy as the named beneficiary alone does not compel a conclusion that Paul Siegler would not have benefitted had any loss been sustained by the jointly-owned property. Mr. Hartog spent most weekends working on the property, and for this reason it can be opined that the liability and personal property insurance premiums were costs he necessarily incurred in connection with the repairs and improvement of the property for the benefit of both co-tenants. The Hartogs furnished the house just sufficiently for their weekend ventures in improving the property. We find no error in the trial court's finding that these expenditures were incurred as necessary expenses.

The same reasoning supports the finding of the trial court that expenditures for gasoline, fuel oil, electricity, light, heat and power benefitted the co-tenants, i. e. that they were necessarily incurred in the repair and improvement of the jointly owned property.

We find no error.

Appellants' next claim of error is that the trial court erred in reimbursing the respondents for expenditures made prior to Mrs. Siegler's death and during the probate of her estate. The basis for this claim is that such expenditures constitute a claim against Mrs. Siegler's estate and are barred by § 473.360 RSMo 1978, because not filed within six months of publication of letters testamentary in said estate.

■ Partition is a proceeding in rem and not in personam; *State ex rel. State*

*Park Board v. Tate,* 365 Mo. 1213, 295 S.W.2d 167, 168[3], 59 A.L.R.2d 933 (banc 1956). It is simply a suit to divide the property, or where a sale of same is deemed necessary, the proceeds of said sale among the co-tenants. The interests of the parties are thereby protected; no money judgment can be entered against any of the co-tenants. Id., l.c. p. 169.

With respect to the general statute of limitations, Missouri cases have held that in an equitable partition the statute does not bar a claim for improvements. *Henry v. Steward,* supra, l.c. 530[5]; *Adams v. Adams,* 180 S.W.2d 241, 243[2] (Mo.App.1944); *Byrne v. Byrne,* 289 Mo. 109, 233 S.W. 461, 464[4] (1921).

Section 473.360(1) of the Missouri Probate Code as revised in 1955, and in effect at the time this cause was tried, barred "All claims against the estate of a deceased person ... whether due or to become due, absolute or contingent, liquidated or unliquidated, founded in contract or otherwise, which are not filed ... within nine months after the first published notice of letters testamentary ..." Section 473.360(4) exempts from this non-claim limitation period "Any action or proceeding to enforce any mortgage, pledge or other lien upon property of the estate; except that attachment, judgment and execution liens shall be enforced as provided in this law and not otherwise."

■ The plain language of the statute implies that an equitable lien is an "other lien" and exempt from the statute. Prior interpretation of § 473.360(1) also indicates that the statute does not include the lien in this case. Section 472.010(3) provides that "claims" includes liabilities of the decedent which survive, whether they arise in contract or tort or otherwise. "Liability," in probate matters, usually refers to a debt or a pecuniary obligation. *Strumberg v. Mercantile Trust Co.,* 367 S.W.2d 535, 538[4] (Mo.1963). Neither of these is present here, and this action makes no claim for reimbursement from Harriett Siegler's estate nor from Paul Siegler, personally; rather,

reimbursement is sought from the real estate and satisfaction of the claim will be from the proceeds of the sale of said real estate upon the granting of partition.

Appellants' argument that to exempt equitable liens from the statute will frustrate the orderly administration of estates because since the executor has no notice of an equitable lien and therefore is unable to reserve assets to satisfy the equitable lien is without merit. There is no need to reserve any assets of the estate to satisfy a co-tenant's lien for improvements. The only asset here is the real estate held in co-tenancy and which passed directly to Paul Siegler upon his mother's death, subject to respondent's claim. *In re Jackson's Will*, 291 S.W.2d 214, 223[19] (Mo.App.1956); *Hill v. Morrison*, 436 S.W.2d 255, 256[2] (Mo.App. 1969).

We hold that § 473.360 RSMo 1978 did not outlaw respondent's claim for reimbursement for expenditures made by Mr. Hartog.

Appellant complains that the trial court erred in adjudging an equitable lien in the amount of $15,128.00 from the proceeds of the sale of the property. We hold the trial court did not err.

Owen Hartog and Harriett Siegler agreed to assume the deed of trust and to pay Haroco's acquisition expenses in consideration for the property. The trial court found that the conveyance and the dealings between the parties and Mrs. Siegler's estate files and the estate tax return evidenced an intent of the parties that the property stand good for the debt owed Haroco.

To give rise to an equitable lien there must be a debt, a duty or an obligation owing by one person to another; a res to which the obligation attaches, which can be identified or described with reasonable certainty; and an intent, express or implied, that the property serve as security for the debt or obligation. *Wilkinson v. Tarwater*, 393 S.W.2d 538, 542[5] (Mo.1965); *Pine Lawn Bank & Trust Co. v. Urbahns*, 417 S.W.2d 113, 117[6] (Mo.App.1967); 51 Am. Jur.2d Liens, p. 162, § 24.

Under the circumstances in evidence, the close relationship between the vendor and the vendees, and the conduct of the parties subsequent to Haroco's payment of the note, it was not error for the trial court to conclude that the land was intended as security for the debt owed by Owen Hartog and Harriet Siegler.

The conveyance was prompted by tax considerations; no money changed hands. Owen Hartog and Harriett Siegler orally agreed to assume the note and then became personally liable on the agreement to Haroco. *Missouri Home Savings & Loan Ass'n v. Allen*, 452 S.W.2d 109, 113[4] (Mo.1970). When Haroco paid the note it was subrogated to the rights of the mortgagee. *Wayman v. Jones*, 58 Mo.App. 313, 318 (1894); *Citizen's State Bank v. Pettit*, 85 Mo.App. 499, 508 (1900).

The actions of the parties support this view of the agreement. They treated the continuing indebtedness as a bookkeeping necessity rather than as a breach of contract. They were not adverse to one another, and it was not, under the circumstances, unreasonable for these parties to leave the indebtedness as a continuing entry on their books. With the close identity and good faith existing between the parties, it would be inequitable not to permit Haroco and Owen Hartog to adjust their dealings with respect to the property.

An equitable vendor's lien is the creation of a court of equity, arising from an executed conveyance of land without payment of the purchase price, and based upon the principle that it is wrong for a person to retain lands of another without paying the purchase price. 77 A.L.R. 270, 271 (1932). The doctrine applies only in cases where the law fails to give relief and justice would suffer without the equitable remedy. *Wilkinson v. Tarwater*, supra, l.c. 542. By reason of the parties apparent decision to allow the land alone as security for the debt owed Haroco, it has no recourse other than to assert an equitable right of recovery from the proceeds of the partition sale.

Appellant argues further that the claim of Haroco is barred by § 473.360 because it is a claim against the estate of Harriett Siegler. What we have said hereinabove with respect to the respondent's claim for improvements is also applicable to appellant's position on this claim.

■ Appellant also raises § 516.120 RSMo 1978—the five year statute of limitations—as a bar to Haroco's claim. However, this statute was not pleaded and therefore is not properly before us. Rule 55.08 requires that to interpose the defense of outlawry the particular statute must be alleged with specificity, and the failure of appellant to plead the special statute of limitations upon which he relies deprives him of that defense. *Modine Mfg. Co. v. Corlack,* 510 S.W.2d 462, 467[2] (Mo.1974).

We rule this claim against appellant.

Appellant's final claim is that the trial court erred in awarding attorney's fees of $4,860.00 to respondents' counsel. We rule this point against appellant.

■ The determination of a reasonable attorney's fee in a suit for partition is a matter within the sound discretion of the trial court, *Billinger v. Jost,* 510 S.W.2d 57, 58[1] (Mo.App.1974), and, the exercise of this discretion by the trial court will not be second-guessed by an appellate court except where it is evident that the award was so arbitrary or unreasonable as to shock all basic sense of justice. *Brown v. Brown,* 495 S.W.2d 89, 92[1] (Mo.App.1973). That is not the case here; the award does not shock our sense of justice, and we rule this point against appellants.

Judgment affirmed.

STEWART and SNYDER, JJ., concur.