WALKER *v.* ELLER.

Opinion delivered October 29, 1928.

*Steel & Edwards* and *DuLaney & Steel,* for appellant.

*Collins & Collins, Lake, Lake & Carlton* and *E. F. Friedell,* for appellee.

HUMPHREYS, J. Appellants, except Penn Walker, are the only legal heirs of Lucy Walker, deceased, who died intestate on the 22d day of January, 1926, Penn Walker being her husband and the other appellants her children. Lucy Walker was a niece of John H. Hamilton, an aged bachelor, who died on March 8, 1926, holding the

legal title and residing upon the following real estate, to-wit: "The southwest quarter of the northeast quarter, part of the northeast quarter of southwest quarter, section 8, township 11 south, range 29: west half of the east half and the east half of the west half, section 17, township 11 south, range 29 west, containing in all 275 acres, more or less, all in Sevier County, Arkansas." Appellees are the only other legal heirs of John H. Hamilton, deceased, and are either nieces and nephews or grandnieces and grandnephews.

The appellants were residing with and caring for John H. Hamilton at the time of his death, and continued to reside upon and operate the farm after his death, and are still residing thereon.

On the 16th day of August, 1926, appellees brought this suit against appellants in the chancery court of Sevier County, for partition of said lands and an accounting for rents and profits derived therefrom, alleging that they owned an undivided three-fourths interest and appellants an undivided one-fourth interest therein. Appellants filed a demurrer to the complaint, alleging, among other grounds, that the chancery court had no jurisdiction of the subject-matter contained in the complaint. No reason was assigned in the demurrer why said court was without jurisdiction. The court overruled the demurrer, over appellants' objection and exception.

On December 4, 1926, appellants filed an answer, reserving their exception to the overruling of their demurrer, denying the material allegations of the complaint, and a cross-complaint, alleging sole ownership of the lands under and by virtue of an executed oral contract whereby John H. Hamilton agreed with them, about the first of June, 1919, to convey them the land by deed or will, in consideration that they take care of him the rest of his life, by furnishing him with such moneys, clothes, food and home comforts as he needed, and pay the taxes and keep up the repairs on the land. They further alleged that, pursuant to the agreement,

John H. Hamilton executed a will on the 10th day of June, 1919, in which, after making specific legacies to all his other heirs, he devised the lands in question to Lucy Walker, the wife of Penn Walker and the mother of the other two appellants, which will was duly proved and probated. They further alleged that, in the performance of the contract on their part, they expended large sums for improvements, repairs, taxes, and in the care and support of John H. Hamilton for each year from the year 1919 to the year 1926, inclusive, for which amounts they prayed a lien upon the lands in the event the court should find the contract and will ineffective to vest such an equitable title to the lands in them as would warrant the court in vesting the legal title thereto in them.

Appellees filed a reply to the cross-complaint, denying all the material allegations therein, and interposed the additional defenses of the three-year statute of limitations, and the statute of non-claims, and an offset of rents against the claim, and a prayer for a lien against the lands for improvements, repairs, taxes and the care and support of John H. Hamilton during the years 1919 to 1926, inclusive.

The cause was heard upon the pleadings and testimony, which resulted in the following findings and decree by the court: That no oral contract as alleged was entered into between Walker and the testator, John H. Hamilton; that the legacy to Lucy Walker had lapsed, because she predeceased the testator by two months; but that said taxes paid and certain improvements made upon the real estate were relevant to the will, to-wit: Cost of tenant house, $200; cost of addition to dwelling house, $400; cost for drilling well, pump and equipment, $500; cost of shed to barn, $100; cost of repairs to hay barn, $75; cost of bridge built to pass from one side of the farm to the other, $100; amount paid for road improvement taxes, $591.73; expenses paid in the last illness and for funeral expenses of the deceased, John H. Hamilton, $495; cost of clearing seven acres of land,

$70; amounting in all to $2,531.73. That appellee should be allowed an offset against said total amount for the rental value of the lands for the years 1926 and 1927, amounting to $800; and decreed a lien upon the land for balance due for said improvements made and taxes paid by Penn Walker; that appellees and appellants were owners and tenants in common of said land, and that a partition could be had when so desired by the parties. Each party appealed from the findings and decree in so far as same were adverse to them respectively.

The record reveals, according to the undisputed facts, that John H. Hamilton, an aged bachelor, was the owner of a farm consisting of 275 acres, of the value of $14,000, in Sevier County. He was residing upon the farm alone in 1918, and, in order to be more comfortable, rented the farm to Penn Walker for the year 1918 for $400 and the payment of the taxes and upkeep or repairs of the place. Walker and his family, consisting of Lucy, his wife, and Louis and Edna, their two children, moved from where they were residing to the Hamilton farm, where they all resided as one family. In July, 1918, Penn Walker and John H. Hamilton entered into a written rental contract by the terms of which Walker was to take the place for a period of ten years, commencing in the year 1919, for which he was to pay an annual rental of $400, the taxes and the upkeep or repairs of the place, including ditches and fences. The rental contract was not acknowledged or placed on record at the time of its execution. The parties all continued to reside in the Hamilton home as one family until the death of Lucy Walker, January 22, 1926, and after her death they all remained there just as before until the death of John H. Hamilton, on the 8th day of March, 1926, and after his death Penn and his two children remained, and are still there. On the 10th day of June, 1919, Hamilton made a will, in which, after specific legacies to others, he devised the residue of his property, including said farm, to Lucy Walker, who was his niece. Four days thereafter, or on the 14th

day of June, 1919, Hamilton and Walker appeared before George B. Milford, a notary public, and acknowledged the ten-year lease contract made in July, 1918, and on the 16th day of June, 1919, they filed the lease for record in the office of the recorder of Sevier County. Penn Walker paid John H. Hamilton the rent for 1918, but never paid any stated amount of rent thereafter, but paid the taxes, kept up the repairs, and made some permanent improvements on the property, furnished Hamilton such money as he needed from time to time, and paid Hamilton's doctor and hospital bills whenever he was sick. The receipt for the taxes was taken in the name of John H. Hamilton for all, except a few acres, of the land during his lifetime. The total amount paid out by Penn Walker for improvements, taxes and the last illness and funeral expenses of John H. Hamilton amounted to $2,531.73. The parties to this suit and Penn Walker are the only heirs of John H. Hamilton, deceased.

According to the testimony introduced by appellants, which must be regarded as disputed on account of the interest of the witnesses testifying in the result, and on account of contradictory circumstances, an oral contract was entered into, about two weeks before the execution of the will, or before the first of June, 1919, between the Walkers and John H. Hamilton, whereby Hamilton obligated himself to convey, either by will or deed, the lands in question to the Walkers, in consideration that they would care for and support him in health and sickness during his lifetime, and that, pursuant to said agreement, the will was executed.

Appellants first contend for a reversal of the decree because the court overruled their demurrer to the jurisdiction of the court. Their demurrer did not state that they were in possession of the lands, claiming the legal title thereto, and that they were entitled to have their title determined in a court of law before an equity court could partition same. Even in their answer they only

set up an equitable title by way of defense, dependent on an alleged executed oral contract.

A court of equity has jurisdiction to determine whether a party has an equitable title to land. A court of equity also has jurisdiction to partition lands among tenants in common, according to their several interests; so the court, under the allegations of the complaint, had jurisdiction of the parties and subject-matter. The defects in the complaint pointed out by learned counsel in their brief should have been reached by a motion to make the complaint more definite and certain, and not by demurrer. The court therefore properly overruled the demurrer.

Appellants' next contention for a reversal of the decree is that the finding of the trial court that the alleged oral contract was not entered into between the Walkers and John H. Hamilton is contrary to a preponderance of the testimony. It is true that appellants testified that a contract was entered into, and that the will was made pursuant thereto, but it will be observed that Hamilton devised the lands and personal property, except specific bequests, to Lucy Walker, and not to them all, or to Lucy and Penn Walker in accordance with the tenor and effect of the oral agreement. The ten-year lease, which was acknowledged and put on record after the will was executed, is contradictory of the oral contract testified to by appellants. In fact, it superseded the oral agreement, if such an agreement was ever made. The acknowledgment and recording of the lease was a recognition of John H. Hamilton's title to the lands after the execution of the will. There is no inconsistency between the will and the ten-year lease. It is a perfectly consistent act for one to lease lands which he has devised by will to others. The will, however, was inconsistent with the alleged oral contract, because not made to both Penn and Lucy Walker, or to all the Walkers, and the oral contract was, if made, inconsistent with the ten-year lease and was displaced by it.

Again, it was necessary to establish the oral contract by clear, decisive and convincing testimony. With this rule in mind it cannot be said that the finding of the trial court, to the effect that no oral contract was made, is contrary to the weight of the evidence.

Appellees contend for a reversal of that part of the decree declaring a lien upon the land for repairs, improvements, taxes, etc. They contend the claims for these expenditures should have been presented against the estate of John H. Hamilton within the statutory period prescribed for presenting claims, and that the claims are barred by the three-year statute of limitations and the statute of non-claim.

Under the facts in this case their contention is without merit. According to the testimony of appellants, they paid the taxes and made permanent improvements upon the farm under the honest belief that they had acquired title thereto under an oral contract for the maintenance and support of John H. Hamilton, together with the will which he afterwards made to Lucy, in which he devised the lands to her. They perhaps would have succeeded in establishing their oral contract had the test been that they could establish it by the weight of the testimony instead of by the clear, decisive, and convincing rule of evidence. We think, under the circumstances of the case, it would be inequitable to allow appellees to ask a partition of the lands at the expiration of the ten-year lease without a lien being declared thereon for the amounts appellants expended under the honest belief that the lands belonged to them.

We think the wholesome rule, that one asking equity must do equity, is applicable to the facts in this case.

No error appearing, the decree is affirmed on the direct and cross appeals.