**CONTOUR CHAIR-LOUNGE COMPANY, Inc., a Corporation, Appellant,**

**v.**

**Joseph F. LASKOWITZ and Mercantile Trust Company and Louise Mulhern, Executors of the Estate of James Joseph Mulhern, Deceased, Respondents.**

**No. 47090.**

Supreme Court of Missouri,

Division No. 2.

Dec. 14, 1959.

Motion for Rehearing or to Modify Opinion Denied Jan. 11, 1960.

---

Dubail, Judge & Kilker, Charles R. Judge, St. Louis, for appellant.

Suelthaus & Krueger, William Kohn, St. Louis, for respondent Laskowitz.

## STORCKMAN, Judge.

This controversy involves the proper division between a patentee and his exclusive licensee of damages jointly recovered by them in a patent infringement action. The proceeds of the judgment in the amount of $12,972 was received by the exclusive licensee Contour Chair-Lounge Company, Inc., and the patentee Joseph F. Laskowitz made claim against the Company for the entire amount. He obtained judgment for $9,729 and the Company appealed claiming, inter alia, that it is not indebted to Mr. Laskowitz in any amount.

The respondent Laskowitz, the owner of certain patents relating to an article of furniture known as a "Contour Chair-Lounge", by a licensing agreement dated April 1, 1947, granted to the appellant Contour Chair-Lounge Company the exclusive right, permission and franchise to manufacture, sell, and promote the chair-lounge during the entire existence of the patent. The Company agreed to pay a royalty of $3 for each chair manufactured and sold by it or its sub-licensees to be paid, so far as here material, one-half to Mr. Laskowitz and the other half to James J. Mulhern.

On September 30, 1950, an agreement was executed purporting to amend the license agreement of April 1, 1947, by the terms of which the appellant Company agreed with respondent Laskowitz and Mr. Mulhern as licensors that it would pay all reasonable and necessary expenses of litigation involving the validity or infringement of the patents licensed to the Company. Mr. Mulhern died, apparently on September 30, 1953, and the Mercantile Trust Company and Louise Mulhern became the executors of his estate. After the death of Mr. Mulhern, Mr. Laskowitz contended that he and not the Mulhern Estate was entitled to receive the royalty of $1.50 per chair previously payable to Mr. Mulhern under the license agreement. The Contour Company brought an interpleader suit directed against Mr. Laskowitz and the Mulhern Estate and deposited the amount of the disputed royalties in court. Interpleader was allowed and on a separate trial the court found that the Mulhern Estate, rather than Mr. Laskowitz, was entitled to the royalties accruing after Mr. Mulhern's death; that judgment became final. The defendant Laskowitz filed in the interpleader suit a cross-bill in three counts. The first two have been separately disposed of and we are concerned only with Count 3 of the cross-bill since it was on this count that the defendant Laskowitz obtained the judgment against the plaintiff Company which is the basis of this appeal. The evidence introduced at the hearing on Count 3 of the cross-bill consists wholly of documents, records, and agreed statements. The evidence leaves some of the factual background undeveloped but apparently not in any material respect.

Early in 1953 Mr. Laskowitz and the Contour Company joined as co-plaintiffs in an action in the Federal Court in California

against Marie-Designer, Inc., and others. Prior to December 31, 1952, these defendants had had certain exclusive distributing rights to the chair under contract with Contour. The amended complaint upon which the case was tried was in three counts. The first was for patent infringement, the second was for infringement of a trademark registered by Contour Company in the United States Patent Office, and the third count was for damages for unfair competition. The court in its final judgment after appeal and final accounting found that United Letters Patent No. Des. 157,269 were good and valid in law and were owned by Mr. Laskowitz; that Contour Company was the exclusive licensee thereunder, and that Marie-Designer, Inc., and the other defendants had infringed the letters patent by making, using, and selling chairs. The court further found that certain trade-marks, owned by the plaintiff Contour Company, had been infringed by the defendants, and that the defendants had committed acts of unfair competition against the plaintiff Contour Company. A permanent injunction was issued against the defendants on all counts, and a money judgment was rendered in favor of the plaintiffs Laskowitz and Contour on the patent infringement count for $13,972 as "damages suffered by plaintiffs from said infringement by defendants". Satisfaction of the judgment in Federal Court was entered by payment in compromise of $12,972. The reported opinion of the trial court is Laskowitz v. Marie-Designer, Inc., D.C., 119 F.Supp. 541.

The Contour Company expended the sum of $30,094.48 in the prosecution of the California action. The U. S. District Court so found but did not assess any part of this expense against the defendants. One of the Company's contentions on this appeal is that it is entitled to be reimbursed for this expense out of the proceeds of the judgment.

Mr. Laskowitz was a director of Contour Company at all times mentioned herein and was its president until his resignation effective on January 17, 1955. Mr. Mulhern was also an officer and director of the appellant Company. The minutes of the directors' meeting of January 14, 1955, show that a check for $12,972 from Marie-Designer, Inc., in settlement of the California judgment was received and delivered to the Company treasurer. At this same meeting a letter from Mr. Laskowitz, demanding payment of a demand note to him dated December 30, 1953, was read; there was also discussion of the disputed Mulhern royalties. At the directors' meeting on March 4, 1955, Mr. Laskowitz for the first time made claim to the proceeds of the infringement judgment "requesting the payment to him of certain royalties as the inventor" and the matter was referred to the Company's attorney.

The appellant Contour Company attacks the validity of the amendatory agreement of September 30, 1950, in which it was "mutually agreed that in the event that any suit is instituted by or against either or both of the Licensors involving the validity or infringement of the patents licensed by said Agreement, that Company agrees to pay all reasonable and necessary expenses involved in connection therewith, but Company reserves the right to approve such actions or expenditures before they are incurred." The agreement was executed on behalf of the Company by Joseph F. Laskowitz as president and M. Kassel as secretary with the seal of the corporation affixed. There is no evidence that the officers were not authorized to act for the Company. The agreement was also signed by Joseph F. Laskowitz and James J. Mulhern as licensors. This, as well as the previous agreement, lacks many of the details and refinements of the usual licensing agreement. What we have quoted is the only reference to infringement suits and there is no provision for division or disposition of recoveries.

The appellant contends the contract amendment is invalid for want of consideration and because it was executed by Joseph F. Laskowitz on behalf of the cor-

poration and for himself individually thereby resulting in his obtaining an unconscionable advantage. These issues were not raised by the pleadings nor were they asserted in the Company's motion for new trial. In fact the answer of plaintiff Company to the cross-bill stated: "That Plaintiff [Contour] agreed with said Defendant [Laskowitz] to pay the reasonable expenses of any suit involving the validity or infringement of said patents but is entitled to be reimbursed therefor by damages recovered." Also in the judgment on separate trial of Count 2 of the Laskowitz cross-bill the court found and declared that the patents therein listed were licensed to Contour Company by the contract of April 1, 1937, "as amended and supplemented by the agreement dated September 30, 1950." The claim of invalidity is clearly not available on this appeal. To dispose of the contention, it is sufficient to invoke the rule that a case cannot be tried on one theory in the trial court and on another and different theory on appeal. Cleary v. Cleary, Mo., 273 S.W.2d 340; Huss v. Heydt Bakery Co., 210 Mo. 44, 108 S.W. 63.

■■ But quite apart from the express assumption by Contour, the Company could not have required the patentee to prosecute the infringement suit and pay the expenses thereof unless the licensing agreement specifically so provided. In 69 C.J.S. Patents § 250(c), pp. 777–778, the rule is thus stated: "In the absence of a covenant to protect the licensee against infringers, there is no obligation on the part of the licensor to do so. Thus, in the absence of an agreement, the licensor is under no obligation to prosecute infringers or to contribute to the cost of such suits brought by the licensee; but the agreement may impose such obligation on the patentee." See also to this effect: Ellis, Patent Assignments and Licenses, 2d Ed., § 690, p. 721; Photochart v. Del Riccio, 94 Cal.App.2d 315, 210 P.2d 547, 550[4]; Western Electric Co. v. Pacent Reproducer Corp., 2 Cir., 42 F.2d 116, certiorari denied 282 U.S. 873, 51 S.Ct. 78, 75 L.Ed. 771; Lathrop v. Rice & Adams

Corp., D.C., 17 F.Supp. 622, 628[14]; Martin v. New Trinidad Lake Asphalt Co., D.C., 255 F. 93, 96[2].

■ The appellant Company contends that the agreement, being silent on the subject, should not be construed to preclude reimbursement. It says that the respondent Laskowitz showed by his conduct that the agreement was not intended to deny appellant's right to reimbursement and that the construction by the parties is controlling. The Company relies upon Mr. Laskowitz's attendance at meetings of the board of directors previously referred to and his failure to object to the receipt of the settlement check, or to the payment of expenses of the litigation by the Company, and his failure to make claim to the damages recovered at the same time other demands were made. The evidence is insufficient to establish an agreement either express or implied on the part of the patentee to finance the litigation or to reimburse the licensee for its expenditures out of the damages recovered.

■ Next the appellant asserts that as a matter of equity and right it is entitled to apply the infringement recovery to reimburse it for expenses incurred in producing the recovery, citing Collins v. Hupp Motor Car Corp., D.C., 34 F.2d 787, and Henry v. Steward, 363 Mo. 213, 250 S.W.2d 527. In the Collins case it was held that a co-owner of a patent was entitled to reimbursement for expenses paid by him in the prosecution of an infringement suit out of the recovery where the other co-owner had refused to cooperate in the prosecution of the action. In the Henry case two sisters sued their brother for an accounting for rents and profits from farm land, and it was held that where the brother took over the farm on the father's death and in good faith made improvements and expenditures beneficial to all, the owner was entitled to reimbursement. The equitable doctrine of reimbursement out of the fund realized can have no application where a contrary rule of law exists and is confirmed by express contract. The contention is denied.

In the infringement suit the District Court of California found that the U. S. Patent No. Des. 157,269 was owned by Joseph F. Laskowitz and that Contour Chair-Lounge Company, Inc., owned the exclusive right and license to make, use, and sell chairs embodying the design of the letters patent. A similar finding was made by the trial court in the present case and on Count 2 of the cross-bill of defendant Laskowitz.

■ The right of a patentee to enjoin infringement of his patent and to recover damages for such violation is based on statute and arises out of the monopoly granted him by law. 35 U.S.C.A., §§ 271, 281, 283, 284, and 289. License agreements on the other hand are contractual in nature and generally do not have any statutory basis although they deal with rights having a statutory origin. Ellis, Patent Assignments and Licenses, 2d Ed., § 389, p. 395. Section 261, 35 U.S.C.A., enacted in the 1952 revision, contains this paragraph which is new: "Applications for patent, patents, or any interest therein, shall be assignable in law by an instrument in writing. The applicant, patentee, or his assigns or legal representatives may in like manner grant and convey an exclusive right under his application for patent, or patents, to the whole or any specified part of the United States." This appears to be declaratory of existing law.

■ It is well established that both the patentee and his exclusive licensee have rights protectible by injunction against infringement and each may be entitled to damages for infringement of the patent. Generally both the patent owner and the exclusive licensee are necessary parties to an action in equity to enjoin an infringement and to obtain an accounting. Independent Wireless Telegraph Co. v. Radio Corporation, 269 U.S. 459, 46 S.Ct. 166, 168[1], 70 L.Ed. 357; United States v. Krasnov, D.C., 143 F.Supp. 184, 200[12], affirmed 355 U.S. 5, 78 S.Ct. 34, 38, 2 L.Ed.

21, 22; Ellis, Patent Assignments and Licenses, 2d Ed., § 882, p. 879.

The right of the exclusive licensee to recover damages from an infringer is recognized and explained in the Independent Wireless case, 46 S.Ct. 169–170, as follows: "It seems clear, then, on principle and authority, that the owner of a patent, who grants to another the exclusive right to make, use, or vend the invention, which does not constitute a statutory assignment, holds the title to the patent in trust for such a licensee, to the extent that he must allow the use of his name as plaintiff in any action brought at the instance of the licensee in law or in equity *to obtain damages for the injury to his exclusive right by an infringer,* or to enjoin infringement of it." (Emphasis added.)

The rights of an exclusive licensee is similarly recognized in the Krasnov case wherein it was held that an exclusive licensee "has the power to compel the patentee *to protect his incident of exclusive enjoyment* and he may thus join the patentee in a patent infringement suit." And also in the same case: "Thus, *under Patent law, where one is an 'exclusive licensee' he has a right to exclude others as an incident of patent monopoly* and he does not run afoul of the Antitrust laws." (Emphasis added.) 143 F.Supp. 200. See also Ellis, Patent Assignments and Licenses, 2d Ed., §§ 885 and 886, p. 887, and General Motors Corp. v. Blackmore, 6 Cir., 53 F.2d 725, 730.

■ The elements of damage sustained by the patentee and the exclusive licensee respectively are well stated in Ellis, Patent Assignments and Licenses, 2d Ed., § 882, p. 884, as follows:

"* * * there are two possible recoveries in an infringement suit brought in the joint names of the owner of the legal title and the exclusive licensee:

"(1) Damages to the owner of the legal title due to loss of royalties which

would have been paid him by the exclusive licensee, but for the infringement.

"(2) Damages to the exclusive licensee for loss of profits which he would have made after paying royalties, but for the infringement."

The license agreement has nothing to do with damages for infringement except as it shows a reservation of financial interest by the patentee and furnishes some guide or standard, evidentiary in nature, with regard to the proper division of infringement damages between the patentee and his exclusive licensee. In National Hollow Brake Beam Co. v. Bakewell, 224 Mo. 203, 230–231, 123 S.W. 561, where the owner of the patent had given an exclusive license and a lease to the premises at a fixed rental for the manufacture of the patented article, it was held that the patentee could not have become entitled to a judgment for profits and damages for infringement because the right of recovery was vested in the licensee.

Apparently confusion has resulted because the federal court assessed the plaintiffs' damages on the basis of a "reasonable royalty" of $4 for each of the 3493 infringing chairs. This was pursuant to § 284, 35 U.S.C.A., which provides: "Upon finding for the claimant the court shall award the claimant *damages* adequate to compensate for the infringement, but in no event less than a *reasonable royalty* for the use made of the invention by the infringer, together with interest and costs as fixed by the court." (Emphasis added.) The court found that the defendant infringers had made no profit from the 3493 chairs in question and therefore the damages could not be fixed on that basis. The court further found that Contour made a profit of $4.69 per chair after payment of royalties upon the chairs manufactured and sold by it during the infringement period; that Contour had the capacity to produce the chairs made by the infringers and if it had done so its fixed overhead would have been reduced by $1.50 per chair and its profits

would have been correspondingly increased; that, because of the previous good and apparently profitable relations of the parties, the plaintiffs Laskowitz and Contour were not entitled to any increase of compensatory damages or to any punitive damages for patent infringement; that under the only sub-license granted by Contour it charged and collected a royalty of $5 per chair and that a "reasonable royalty" to be assessed against the infringers was $4 per chair. The court adjudged that: "Plaintiffs shall recover from the defendants the sum of Thirteen Thousand Nine Hundred and Seventy-two Dollars ($13,972.00) *damages suffered by plaintiffs* from the said infringement * * *." (Emphasis added.)

Contour contends awarding Laskowitz a share of the infringement recovery based on the $3 royalty payable under the licensing agreement was improper because the contract does not provide for royalties payable out of damages for infringement and cites 69 C.J.S. Patents § 258, pp. 792, 793–794, which is authority for the proposition that the liability of a licensee for royalties is determined by the licensing agreement. The patentee having granted an exclusive license is limited to that contract for the recovery of royalties as such; but here we are dealing with damages not contractual royalties. A patentee has a statutory right to damages which he may assert against an infringer and he may retain the damages recovered unless he has, as against his licensee, alienated his right to do so. Where, as here, the patentee has reserved a royalty on each of the patented articles manufactured and sold, the patentee has been injured to the extent that the infringer's activities diminished the number of chairs sold by Contour with resultant loss to the patentee of contractual royalties. The question presented is the proper division where the damages recovered is not sufficient to make both of the injured parties whole. This question must be determined by a consideration of the material provisions of the licensing agreement

and the application of equitable principles where there is no other standard to guide us.

We cannot agree with respondent's contention that he is entitled to the whole recovery because the damages were assessed on the basis of a "reasonable royalty." That statutory term is as much applicable to an exclusive licensee as a patentee when an infringer is involved. Nor is the contractual royalty wholly determinative of the amount of patentee's interest where the damages awarded to the patentee and the licensee jointly are less than the total damages suffered.

The appellant Company contends that it is entitled to the entire recovery because its loss of profits and damages exceeds $70,000 and that it is being forced to bear the entire burden of the damages not recovered. This argument discounts the fact that in the usual course of business royalties must be paid to the inventor before profits are determined. We see no reason to ignore entirely the loss of the patentee because the recovery arises out of an infringement of the patent monopoly. The opinion in the infringement case recognizes that the licensee has received benefits not measured by the award of damages. Laskowitz v. Marie Designer, Inc., D.C., 119 F.Supp. 553–556.

However, we find no justification in the record for fixing the amount of the patentee's damages at $3 per chair which apparently includes an amount equal to the royalty payable to Mr. Mulhern when the chairs were manufactured and sold pursuant to the exclusive license agreement. So far as appears from the record, Mr. Mulhern was neither a patentee nor licensee and therefore not within the recognized category of persons entitled to sue for damages for infringement of the patent monopoly. He was not a party to the infringement suit and evidently was not a necessary party to the assessment and recovery of damages. The nature of his relations with Mr. Laskowitz that gave rise to the contract provision for royalty payments to him is not disclosed by the record. The Mulhern Estate was a party to this action and filed an answer to the cross-bill which was dismissed as to the estate. No appeal was taken and no brief for the Mulhern Estate has been filed in this court.

The maximum royalty which would have been payable to Laskowitz, the inventor and patentee, if the infringed chairs had been produced by Contour is $5,239.50; that is a total of 3493 chairs at $1.50 each. We do not think the patentee should be called upon to bear any part of the amount remitted from the original judgment by way of compromise, although he agreed to it, because the burden of the expense of further litigation would have fallen upon Contour. The Company appears to have been benefited by the termination of the litigation more than Mr. Laskowitz. An allowance to the respondent Laskowitz of $1.50 for each of the infringed chairs as damages appears to be fair and equitable under all the circumstances.

Accordingly the judgment is affirmed in part and reversed in part. That part of the judgment awarding the defendant Laskowitz the sum of $9,729 is set aside and the cause is remanded with directions to enter judgment for $5,239.50 in favor of defendant Joseph F. Laskowitz and against plaintiff Contour Chair-Lounge Company, Inc.; in all other respects the judgment is affirmed.

All concur.

## PER CURIAM.

The sole question presented by the motion of respondent Laskowitz for rehearing or to modify the opinion concerns the allowance of interest upon the judgment of $5,239.50 directed to be entered. The motion states that the opinion is silent as to interest and asserts that the record shows that the appellant received the sum of $12,972 in

payment of the judgment on or about January 14, 1955; that respondent expressly demanded payment at appellant's board meeting held on March 4, 1955; and that respondent filed his answer and cross-bill on May 2, 1955, in which he claimed the proceeds of the judgment and prayed for "interest and costs." The prayer of the motion for rehearing is that this court allow "legal interest from January 14, 1955." In support of his motion, the respondent cites § 408.020 RSMo 1949, V.A.M.S.; Schmidt v. Morival Farms, Mo., 240 S.W. 2d 952, 961[20–22]; Brink v. Kansas City, 358 Mo. 845, 217 S.W.2d 507, 511[9, 10]; and Laughlin v. Boatmen's Nat. Bank, 354 Mo. 467, 189 S.W.2d 974, 979. The statute and the cases cited tend to support the respondent's contention that he was entitled to interest from the date of demand which appears to have been not later than May 2, 1955, the date of filing the counter-claim against Contour for the proceeds of the judgment recovered from Marie-Designer, Inc.

■ However, the trial court rendered its judgment with "interest to run from date of the judgment". The judgment date is April 23, 1958. So far as disclosed by the record, the respondent did not file a motion for new trial or object in the trial court to the date from which interest was allowed. Nor was the matter brought to the attention of this court before the filing of the present motion. See S.Ct. Rule 1.19, 42 V.A.M.S. In this situation we are precluded from granting the relief requested in the motion because "no allegations of error shall be considered in any civil appeal except such as have been presented to or expressly decided by the trial court." Section 512.160(1).

■ As a matter of law the judgment for $5,239.50, entry of which is directed by the opinion, will bear interest from April 23, 1958, the date of the rendition of the original judgment, because § 512.160(4) provides that: " * * * when such judgment shall be affirmed for part of the sum of

which judgment was rendered by the trial court, such part of said judgment shall bear lawful interest from the date of the rendition of the original judgment in the trial court." Modification of the opinion is unnecessary to accomplish this result.

The motion for a rehearing or to modify the opinion is overruled.